**EXHIBIT C**

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Civil Case No.: 1:24-cv-21285-KMW

BLACK SIX LLC

                    Plaintiff(s),

         v.

ALL AMERICAN REFINERY, INC.,
ISLAND L.P. GAS SERVICES, INC.,
DBA PROPANE MAN, and JESSE
GRANTHAM

                    Defendant(s).

**ORDER GRANTING PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT
JUDGMENT AGAINST THE DEFENDANTS**

THIS MATTER is before the Court on Plaintiff, BLACK SIX LLC's Motion for Entry of a Default Judgment ("Motion") against the Defendants ALL AMERICAN REFINERY, INC., ISLAND L.P. GAS SERVICES, INC., DBA PROPANE MAN, and JESSE GRANTHAM ("Defendants"). UPON CONSIDERATION OF THE MOTION, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following order granting the Plaintiff's Motion and imposing a Default Judgment against the Defendants.

## I.    Introduction

THIS CAUSE comes before the Court upon Plaintiff BLACKSIX LLC, ("BlackSix" or "Plaintiff") Motion for Entry of Final Judgment by Default consistent with Federal Rule of Civil Procedure 55(b)(2) as to the Defendants (ECF. No. 18). Clerk's Default was entered against Defendants under Rule 55(a) on June 6, 2024. (ECF No. 15). Defendants failed to appear, answer, or otherwise plead to the Complaint (ECF No. 1) despite having been served.

"A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact," as set forth in the operative complaint. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). In issuing a default judgment, a court may award damages "without a hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation," as long as "all essential evidence is already of record." *S.E.C. v. Smyth*, 420 F.3d 1225, 1231, 1232 n.13 (11th Cir. 2005) (quoting *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985)).

The Complaint alleges that the Defendants breached its contract with BlackSix by failing to repay Plaintiff the principal of $600,000 for purchase and sale of propane and the profits generated from the purchase and sale of propane as agreed between the parties ("Propane Agreement"). The Plaintiff also requests that a constructive trust be imposed over the profits generated from the funds invested by

Plaintiff pursuant to the contract between the parties. The Plaintiff has filed an affidavit establishing that Plaintiff sustained damages in the amount of $12,930,769.20, which have been calculated as the amount of $600,000.00 paid by Plaintiff pursuant to the Propane Agreement, plus $12,330,769.20 representing the profit yielded from the weekly sales of propane, from August 4, 2023 to July 8, 2024. *See* Parsons Decl. at ECF No. 18. The Plaintiff also has provided evidence of its costs by way of affidavits, identifying those fees and costs in detail. *See* Garson Decl. at ECF No. 18. For the reasons discussed below, Plaintiff's Motion for Final Default Judgment is **GRANTED**.

II.   **Factual Background[1]**

BlackSix was founded in 2021 to source and fund projects focused on global commodity, venture and special situation opportunities.  It was founded by Oliver Parsons ("Parsons"), who has twenty years of experience in international trade and finance, particularly commodities and alternative investments. Parsons is a leading consultant in assessing global energy developments that impact energy prices and related investments, and is sought after by oil companies, investors, governmental organizations and other industry participants. *See* Parsons Decl.

---

[1] The following facts are as alleged by Plaintiff in the Complaint [D.E. 1] and as admitted by virtue of the Clerk's Default. [D.E. 10]. It is further established by the Declarations.

BlackSix has invested in multiple companies including a ship building company based out of Dubai ("Dubai Investment").

AAR is an oil and refined products distribution and logistics company that is held out to be and affirmed by the US Government as a Service-Disabled Veteran Owned Small Business ("SDVOSB"), due to both Grantham and Cantwell's statuses.

Over the past six years, AAR has been awarded numerous US Federal Government contracts entirely due to AAR's SDVOSB minority status. Today, AAR holds multiple US Federal contracts to supply diesel fuel, gasoline, ethanol, and propane, which have been singularly awarded to AAR because of its SDVOSB status.

Some of AAR's US Federal buyers include the US Navy and Veterans Affairs via the Defense Logistics Agency and DLA Energy as shown on Mot. Default J. Exhibit 2 with Issuers and Contracting Officers listed who include Frederick Bagley, Eric Smith, Hannah R Savine, Orlando Merritt, Sabrina Holland, James Clough, Matthew Womer, Sterling Matthews, Juebiline Mbandi, Lawrence Watson.

Grantham is a decorated army veteran who has since monetized his relationships with numerous government agencies to drive growth in AAR and other businesses including Bullock Investigations Security, which he also founded.

In or about early-2023, Blacksix was introduced to Grantham where he made claims that he has access to considerable ongoing volumes of fuel, including gasoline, diesel and propane from over 40 of the most reputable domestic and international refineries such as Shell, BP, Total and Exxon.

In or about early-2023, Grantham suggested to me that he, BlackSix and his substantial commodity network should invest and/or partner in a number of lucrative energy projects that Grantham was spearheading.  Grantham offered to become a strategic partner with me and BlackSix and would share in the profits of these lucrative projects on the condition that substantial investment capital was provided with a value that mostly ranged from $10 million to $2 billion.

In order to gain BlackSix's trust and favor, Grantham promoted his vast network of trusted relationships, which included being business partners with:

      a. His uncle Robert Grantham CBE, a British investor and co-founder and chief investment strategist of GMO, LLC, a Boston based management firm with more than $100 billion in assets under management;

      b. His Godfather who is a retired 4-Star US Navy Admiral;

      c. Retired Colonel Robert Cantwell who attended West Point and had a 20-year career with the US Army Corps of Engineers;

      d. Jeff DeRosia who has over 30 years oilfield construction experience and is Operations Manager for Grand Isle Shipyard;

      e. Major General Jill K. Faris, current Director of the Office of the Joint Surgeon General;

      f. Congressman Mike Ezell of Mississippi; and

      g. The CEO of Shell USA, who Grantham credited to his entrance into the fuel industry, who gave Grantham and AAR office space in Shell's Headquarters in New Orleans, LA and with whom Grantham hunted sport.

In or around May 16, 2023, Grantham persuaded Parsons to meet him and his business partners in Honolulu, Hawaii for a three nights trip to review AAR and its purchase of PROPANE MAN, to meet with Ms. Kelly Matson, Founder and President of PROPANE MAN, to meet with Alvin Paguio, Director of PROPANE MAN, to meet at Pearl Harbor with the US Navy and DLA to discuss its purchase of fuel and propane from AAR and PROPANE MAN, and to meet with Mike Flynn, a retired US Army Lieutenant General. Parsons paid for all hotel rooms for himself, Grantham and his business partners, totaling $2,200, as shown on Mot. Default J. Exhibit 3. Parsons was never reimbursed despite Grantham's promises to do so.

In or about June 2023, Parsons was prevailed upon to introduce DS-Mineralöl GmbH, a German company with a distinguished 50-year legacy and 72 fuel stations, who wished to purchase diesel fuel. Grantham said he, Cantwell and AAR would easily be able to supply fuel due to AAR's SDVOSB minority status. However, Grantham stalled for months, shifted the blame for the delay to Shell and BP, among other excuses, and ultimately never provided a contract, causing Parsons and BlackSix a significant financial and reputational damage.

At around the same time, Grantham stated AAR was seeking $1.5 to $2 billion in investor capital to build a floating oil refinery that had been approved by the US Navy. Due to the military network and SDVOSB minority status that he and Cantwell brought to AAR, the Navy had awarded AAR a decommissioned aircraft

carrier for a $1 purchase price upon which the refinery would be built. Grantham stated this project would be in partnership with Grand Isle Shipyard, specifically Jeff DeRosia who would lead the building of the refinery and its ongoing operation at sea, as shown on Mot. Default J. Exhibit 5.

Grantham asked Parsons and BlackSix to bring investors to this lucrative project in exchange for equity ownership, which BlackSix did, including one of Parsons' most critical relationships from Saudi, ARAMCO, but again Grantham stalled over the next months, provided ongoing excuses for delay, and never consummated the deal, thereby causing Parsons and BlackSix a significant financial and reputational damage.

At around the same time, Grantham stated that AAR was seeking a $10 million investment for the acquisition of Stockstill Trucking Company, which would expand AAR's fuel shipping and logistics network in the US, would provide a very profitable return to investors. See the expansion plan Mot. Default J. Exhibit 5. Grantham suggested that Parsons and BlackSix should bring a potential investor, which BlackSix did, but AAR again never made any progress with the deal, thereby causing Parsons and BlackSix significant financial and reputational damage.

On or around July 2023, Grantham stated that AAR was seeking an investment of $100 million to $400 million to purchase an oil refinery near Dubai, UAE, which Grantham said was offered to AAR due to his and Cantwell's military experience

and AAR's SDVOSB minority status. Grantham asked Parsons and BlackSix for assistance in bringing a suitable investor, so BlackSix again involved one of my most critical relationships from Saudi ARAMCO, but Grantham delayed with the deal, thereby causing Parsons and BlackSix significant financial and reputational damage, once again.

In or about July 2023, Grantham proposed a propane deal whereby BlackSix would provide funding to Grantham of Six Hundred Thousand Dollars ($600,000), which would be specifically used for the purchase and sale of propane by PROPANE MAN and would give BlackSix 10% equity ownership in PROPANE MAN. Upon sale of the propane, BlackSix was to earn a return of one dollar ($1) per gallon sold, and the core $600,000 would be continually revolved to purchase more propane on a weekly basis, and so on. This was memorialized in a signed writing Mot. Default J. Exhibit 6 ("Propane Agreement").

The Propane Agreement is drafted as being between "BlackSix LLC and Jesse Grantham."

Grantham had specifically represented in June and July that he and PROPANE MAN had the capability and capacity to purchase and sell $600,000 worth of propane on a weekly basis, as furtherance to Parsons' trip to Honolulu in May 2023.

Grantham had told Parsons on multiple occasions that AAR and PROPANE MAN were purchasing propane from The Gas Company, LLC dba Hawai'i Gas for

$3.12 per gallon, and therefore $600,000 would have purchased 192,308 gallons per week, yielding a profit to BlackSix of $192,307.69 per week. Grantham told Parsons that his purchase price of propane would drop significantly from $3.12 to $2.00 per gallon starting on January 1, 2024, due to AAR's SDVOSB minority status attributed to Grantham and Cantwell, and therefore $600,000 would have purchased 200,000 gallons per week, thereby yielding a profit to Black Six of $200,000 per week.

From August 4, 2023, to April 2, 2024, the weekly sales of propane using the $600,000 would have yielded $8,130,769.23 in profit, as reflected in the projected profit calculation Complaint Exhibit 7.

In or about September 2023, I had a telephone call with Grantham in which he stated that he would be sending over the profit and loss statements and that the investment I had made was being used to purchase fuel on a rolling basis. It is my understanding that the projected 8 million plus dollars that were going to be made were in fact made.

Accordingly, updating the projected profit calculation through the present day, July 8, 2024, reflects a profit yield of $12,330,769.23, as evidenced by the updated projected profit calculation attached to the Parsons Decl.

As an example of similar profits generated from AAR's businesses deals, Grantham highlighted AAR's purchase and sale of fuel to the DLA and Veterans Affairs, which Grantham assured Parsons was a unique but realistic profit margin

due to AAR's SDVOSB minority status.  A purchase example is attached hereto as Exhibit 8.

On August 1, 2023, BlackSix wired $600,000 to the requested Island Gas Service account held at the Navy Federal Credit Union.

Upon information and belief, Grantham and PROPANE MAN purchased and sold propane on a weekly basis and have generated the anticipated profits, however, have never remitted the profits to BlackSix and have declined to account to BlackSix or even provide confirmations of purchases or sales despite numerous requests.

In attempt to add further legitimacy to his business dealings, Grantham requested that Parsons meet him in Pensacola, FL on August 8, 2023, to discuss trading Propane and have lunch with James, a recent AAR and  PROPANE MAN hire from AmeriGas who Grantham asserted was AmeriGas's top performing propane salesperson for Hawaii and USA West Coast regions, which I duly did, and paid for my own travel expenses.

At or about the same time, Grantham had heard about BlackSix's key investment in the Dubai Company and requested to be allowed to invest alongside BlackSix, as the Company was in a "friends and family" round at that time, and open to a very limited amount of people. Parsons vouched for Grantham and as a result legal documents were prepared as Grantham had indicated that he wished to invest Two Million Dollars ($2,000,000) into the Dubai Company.

On or about September 8, 2023, Grantham met the principals of the Dubai Company, in-person, in Dubai, and executed the documents subscribing to shares in exchange for $2,000,000, to be transmitted over the course of the following four (4) months.

Grantham never transmitted the funds, despite being contacted by counsel for the Dubai Company on numerous occasions.

At or around the same time, in what can only be described as a bizarre and misguided attempt to garner camaraderie regarding his Dubai Company investment, Grantham sent a self-recorded video of him engaging in sexual intercourse with an escort, which included his incredibly lewd language, to those engaged in the Dubai Company.

Grantham's later failure to transmit the agreed-to $2,000,0000 caused financial and reputational damage to Parsons and BlackSix, and significant harm to the Dubai Company, including the loss of the company's largest client, who has threatened lawsuit, and unpaid vendor bills and rent to their shipyard owner, also all of whom have also threatened lawsuit, and a earned the Dubai Company a poor reputation in a small, tightly connected industry. Moreover, Grantham's sharing of his explicit sexual exploits caused significant reputational damage to Parsons and BlackSix, as they introduced Grantham.

In order to keep the Dubai Company solvent and in-business, BlackSix and Parsons have had to cover Grantham's significant monetary shortfall.

Grantham again requested that Parsons meet him for lunch in Pensacola on September 15, 2023, to discuss acquiring AmeriGas (a $4 billion company), who Grantham said had approached him and AAR due to his and Cantwell's SDVOSB status, and asked if Parsons would be part of the Board of Directors and to serve as the public "face" of AmeriGas, to which I agreed.

On or about October 2023, Parsons was prevailed upon to introduce a large fuel station chain, Orion Oil, to AAR and Parsons in order to supply their over 150 locations. Grantham undertook that a contract to supply gasoline and diesel would be issued in November 2023 for 1,000,000 gallons per month and insisted on being able to do so during multiple calls with the CEO of Orion Oil. Confirmation of willingness to contract Mot. Default J. Exhibit 9. Grantham never provided the agreed upon contract, and furnished multiple excuses for the delay, thereby causing Parsons and BlackSix a significant financial and reputation damage.

In or about November 2023, Grantham asked Parsons and BlackSix to review a deal where, due to Grantham and Cantwell's SDVOSB status, AAR was going to buy medical gloves and resell to the US government via Jill Faris, Director of the Office of the Joint Surgeon General. Parsons immediately alerted Grantham that his supplier was not properly credentialed and very likely fake, and therefore Grantham

asked Parsons for a legitimate glove supplier, which Grantham said he would immediately use as a substitute supplier. BlackSix and Parsons provided Grantham and AAR with a legitimate supplier, who held the gloves in warehouse for Grantham as he represented that a purchase order would be issued in November 2023, but nothing was heard of since that date, thereby causing Parsons and BlackSix significant reputational damage.

On 28 December 2023, Parsons asked for return of his $600,000, to which Grantham stated he could not do so at that time. Therefore, Parsons asked for a minimum $200,000 of the funds since that amount was needed for immediate year-end payroll and taxes. Grantham again refused but promised that BlackSix would receive a "large profit" by January 11, 2024.

Nothing was remitted on January 11, 2024.

For the following three (3) weeks, Grantham was almost entirely unavailable by phone, text message and WhatsApp message, clearly ignoring Parsons.

On February 2, 2024, concerned about AAR and Grantham's silence, Parsons called Eric Malmstrom, a Vice President of Government Contracts and trader in hydrocarbon products at AAR ("Malmstrom"). He stated that had never heard of Parsons nor BlackSix, nor did he know anything about the $600,000 committed to trading propane. Further Malmstrom said he was not aware of the contracts that Grantham specifically stated Malmstrom was working on in furtherance of

BlackSix's and PROPANE MAN propane deal, nor the other gasoline and diesel deals BlackSix had brought to Grantham, including the 1,000,000 gallons per month fuel supply that Grantham had said Malmstrom was arranging for Orion Oil by November 2023. Parsons asked Malmstrom to let Grantham know about their conversation and my inability to reach Grantham, to which Malmstrom agreed.

Grantham's ongoing silence persisted so on February 14, 2024, Parsons spoke to Retired Major Leif Rivera, who Grantham has said numerous times was Chief Operating Officer of PROPANE MAN and AAR ("Rivera"). Parsons informed Rivera that Grantham had taken $600,000 from Parsons/BlackSix over six months earlier, and Grantham had not provided any assurance of the profit or whereabouts of the funds, and had been ignoring Parsons for too long. Parsons was told by Rivera that he had no idea about the $600,000 and did not even know Parsons had committed those funds, which greatly alarmed Parsons since Rivera was the COO supposedly overseeing all business operations. The following day Grantham contacted Parsons by WhatsApp, and Parsons was also contacted by Rivera stating that he could not facilitate communications any further.

Due to Grantham's continued silence and lack of assurance of the whereabouts of the $600,000 and profits due, counsel for BlackSix sent an email to Grantham on March 2, 2024, copying in Malmstrom, Rivera and Cantwell, requesting provision

of all documentation regarding the purchase and sale of propane pursuant to the agreement or confirmation as to the status of the monies being held.

Grantham responded on March 4, 2024, stating variously:

a. That he had been in communication with Parsons every week and sometimes multiple times in the day.

b. The reason Parsons asked counsel to contact him was due to bad information from brokers, who have "cost themselves future commissions."

BlackSix counsel responded that day, copying in Malmstrom, Rivera and Cantwell, informing Grantham that his email was non-responsive and reiterated the specific set of demands for documentation or explanation why they are not readily available and kept in the ordinary course of business.  Grantham failed to respond, and nobody responded on behalf of AAR or PROPANE MAN.

On March 8, 2024, since Grantham had still not responded, counsel for BlackSix emailed Grantham again, providing a response deadline on behalf of AAR and PROPANE MAN.

As a result of the Defendants' conduct, BlackSix and Parsons have sustained damages in excess of $1,000,000.00, specifically $12,930,769.20, which have been calculated as follows:

    a.      The amount of $600,000.00 paid pursuant to the Propane Agreement, as referenced herein.

    b.      The amount of $12,330,769.20 representing the profit yielded from the weekly sales of propane, from August 4, 2023 to July 8, 2024.

All of the foregoing is set forth in the Parsons Decl. *See* ECF No. 18.

III.    **Analysis**

**A. Jurisdiction and Venue are proper in this Court.**

This Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §1332, as this is an action where the matter exceeds $75,000.00 and is between parties of different states. *See* Compl. at ¶ 1.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391because the Plaintiff is located within this district and has suffered harm within this district. Defendants are, upon information and belief, located in the United States of America, and engaged in activities and causing harm within this district and because a substantial part of the events giving rise to the claims occurred in this district.

This Court has general personal jurisdiction over Defendant as it conducts systematic and continuous business within Florida. *See* Compl. at ¶ 10.

Forcing the Defendants to defend a suit in the state where the infringing activity gave rise to the suit would not offend traditional notions of fair play and substantial justice.

**B. Default Judgment is Proper.**

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a defendant who has failed to respond to a complaint. "A 'defendant, by his default, admits the Plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.'" *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F. 3d 1298, 1307 (11th Cir. 2009) (quoting *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F. 2d 1200, 1206 (5th Cir. 1975)). "Because a defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the Court must first determine whether there is a sufficient basis in the pleading for judgment to be entered." *Luxottica Group S.p.A. v. Individual, P'ship or Unincorporated Ass'n*, 17-CV-61471, 2017 WL 6949260, at *2 (S.D. Fla. Oct. 3, 2017); *see also Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint, and is therefore established by the entry of default . . . .").

Generally, if one defendant who is alleged to be jointly and severally liable with other defendants defaults, judgment should not be entered against that defendant until the matter is adjudicated against the remaining defendants. Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2690 (3d ed. 1998) (citing *Frow v. De La Vega*, 82 U.S. 552, 554 (1872) ("[A] final decree on the

merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal.")). "Even when defendants are similarly situated, but not jointly liable, judgment should not be entered against a defaulting defendant if the other defendant prevails on the merits." *Gulf Coast Fans, Inc. v. Midwest Elecs. Imp., Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984).

   (i)     *Liability for Breach of Contract Claim*

   "The elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 913 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)).  Plaintiffs have sufficiently pled and established the elements of each breach of contract claim. There was a contract between the parties. The Complaint alleges a breach of the agreed-upon terms. Plaintiff alleges that he has been damaged. *See* Parsons Decl.

   Here, the well-pled allegations in the Complaint, deemed admitted by virtue of the Defendant's default, establish their liability for the claim asserted. Therefore, Plaintiff has demonstrated that the Defendants are liable for breach of contract.

   Here, all Defendants have failed to appear and have defaulted, and the allegations against the entities are the same. Therefore, there is no possibility of consistent liability between the Defendants and an adjudication may be entered.

   (ii)     *Plaintiff's Requested Relief Should be Granted.*

18

Plaintiff seeks to recover monetary damages, post-judgment interest, costs, as well as the imposition of a constructive trust.

Monetary Damages

In issuing a default judgment, a court may award damages "without a hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation," as long as "all essential evidence is already of record." *S.E.C. v. Smyth*, 420 F.3d 1225, 1231, 1232 n.13 (11th Cir. 2005) (quoting *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985)).

BlackSix has submitted a sworn declaration from Oliver Parsons, the founder of BlackSix, along with documentation to substantiate BlackSix's damage calculations. Mr. Parsons states in his declaration that he has personal knowledge of the books and accounts and records regarding this matter. The Parsons Decl. states that the sum of $12,330,769.23 is due and owing to BackSix. BlackSix submits that the Parsons Decl. provides sufficient evidentiary basis for an award of damages in the amount of $12,330,769.23 and accordingly seeks entry of judgment in favor of BlackSix for said sum. The Court agrees that the Plaintiff has provided a sufficient evidentiary basis for the requested relief.


Post-Judgment Interest.

Blacksix is entitled to post-judgment interest, which is mandatory under 28 U.S.C. § 1961(a), which provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." Post-judgment interest shall accrue at the statutory rate. *See* 28 U.S.C. § 1961(b).

<u>Constructive Trust</u>

Plaintiff seeks the imposition of a constructive trust to hold the monies that the Plaintiff avers it is entitled to.  A constructive trust is a "remedial device" which "arises solely by operation of law." *Provence v. Palm Beach Taverns*, 676 So. 2d 1022, 1025 (Fla. 4ᵗʰ DCA 1996) (citations omitted). The objectives of constructive trusts are two-fold: "to restore property to the rightful owner and to prevent unjust enrichment." *Crawley-Kitzman v. Hernandez*, 324 So. 3d 968, 976 (Fla. 3d DCA 2021) (citing *Provence v. Palm Beach Taverns, Inc.*, 676 So. 2d 1022, 1025 (Fla. 4th DCA 1996) (citing *Abreu v. Amaro*, 534 So. 2d 771, 772 (Fla. 3d DCA 1988)). "Courts impose such trusts either upon property acquired by fraud, or when it is "against equity" that someone who acquired property without fraud should continue to retain possession." *Crawley-Kitzman v. Hernandez*, 324 So. 3d at 976 (citing *Provence*, 676 So. 2d at 1025 (citing *Quinn v. Phipps*, 93 Fla. 805, 113 So. 419, 422 (Fla. 1927)).

"In order to sustain a claim for a constructive trust the court must find the complaint establishes (1) the existence of a promise express or implied, (2) transfer

of the property and reliance thereon, (3) the existence of a confidential relationship, and (4) unjust enrichment." *Crawley-Kitzman v. Hernandez*, 324 So. 3d at 976.

Constructive trust is an ancient equitable remedy designed to restore possession to a claimant "where one, through actual fraud, abuse of confidence reposed and accepted, or through other questionable means gains something for himself which in equity and good conscience he should not be permitted to hold." *Quinn v. Phipps*, 93 Fla. 805, 814, 113 So. 419, 422 (1927). *Demosthenes v. Girard*, 955 So. 2d 1189, 1191 (Fla. 3d DCA 2007) (quoting John G. Grimsley, Florida Law of Trusts § 14–1 (4th ed. 2006)) ("[A] constructive trust is an equitable creation, implied from circumstances, to avoid a result that 'allows a party to be unjustly enriched through abuse of confidence, duress, or fraud, whether the fraud is actual or constructive.'").

When a fiduciary tasked with acquiring property on behalf of another acquires the property for himself, the fiduciary becomes a constructive trustee for his principal. *Bush v. Palermo Realty, Inc.*, 443 So. 2d 104, 106 (Fla. 4th DCA 1983). *See also Quinn*, 113 So. at 423 ("if an agent be employed to negotiate the purchase of land for his principal, and violates the principal's confidence by purchasing the land with his own money and taking a deed therefor to himself, he becomes a constructive trustee for the principal's benefit, upon payment of the purchase price."); *Doyle v. Maruszczak*, 834 So. 2d 307, 309 (Fla. 5th DCA 2003) (citing

*Boswell v. Cunningham*, 32 Fla. 277, 13 So. 354 (1893)) ("Where the agent, employed to purchase for the principal, purchases for himself, all the profits and advantages gained in the transaction belong to the principal and the agent will be held to have taken the property as trustee for his principal.").

The Defendants were fiduciaries to BlackSix under common law principles governing the reposing and acceptance of trust and confidence. Based on the foregoing findings of fact, the Defendants breached these common law and statutory duties in nearly every conceivable way through his scheme to take the profits away from Plaintiff and for themselves.

The Complaint satisfies te requisite elements of a constructive trust claim. Plaintiff pleads that the Defendants expressly promised Plaintiff that the moneys remitted by BlackSix would be used for the purchase and sale of propane, which would yield a profit for BlackSix. Plaintiff further pleads the transfer of $600,000.00 in reliance on that promise; the existence of a confidential relationship among the parties; and unjust enrichment due to the failure to repay the amount invested and the profits yielded thereby. Thus, the well-pled allegations of the complaint, deemed admitted by virtue of the Defendants' default, support and sustain Plaintiff's claim for the imposition of a constructive trust.

<u>Costs</u>

Pursuant to Rule 54 of the Federal Rules of Civil Procedure, unless otherwise provided by statute, a prevailing party should be allowed to recover costs. Pursuant to the Garson Decl. BlackSix has incurred $1,382.26 in costs in this matter. The Court agrees that, under Rule 54, as a prevailing party in this matter, Plaintiff is entitled to recovery of the same.

## IV.   Conclusion

Based on the foregoing, it is ORDERED AND ADJUDGED that Plaintiff's Motion for Entry of a Default Judgment against the Defendant is **GRANTED**.  Default Judgment shall be entered by separate order.

DONE AND ORDERED in _____ this ___ day of July, 2024.


_____
KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE