UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:24-cv-21285-KMW

BLACKSIX LLC, a Florida Limited
Liability Company,

    Plaintiff,

v.

ALL AMERICAN REFINERY, INC.,
ISLAND L.P. GAS SERVICES, INC.,
DBA PROPANE MAN, and JESSE
GRANTHAM,

    Defendants.
_____/

## FIRST AMENDED COMPLAINT

Plaintiff, BLACKSIX LLC ("BlackSix" or "Plaintiff"), by and through undersigned counsel, hereby sues Defendants, ALL AMERICAN REFINERY, INC. ("AAR"), ISLAND L.P. GAS SERVICES, INC., DBA PROPANE MAN ("PROPANE MAN") and JESSE GRANTHAM ("Grantham") (collectively, "Defendants"). In support of its claims, Plaintiff alleges as follows:

### JURISDICTION AND VENUE

1. This is an action for fraud where the matter exceeds $75,000.00 and is between parties of different states. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000.00 and there is complete diversity of citizenship between Plaintiff and Defendants.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because the Plaintiff is located within this district and has suffered harm within this district. Defendants are, upon information and belief, located in the United States of America, and engaged in activities and

1

causing harm within this district and because a substantial part of the events giving rise to the claims occurred in this district.

3. This Court has personal long arm jurisdiction over Defendants pursuant to Florida Statute 48.193(7) because Defendants breached a contract in this State by failing to perform acts required by the contract to be performed in this State.

4. Personal jurisdiction over Defendants meets the minimum contacts or due process requirements such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice because Defendants knowingly entered into contracts which contemplate performance thereon in Miami, Florida; modern methods of transportation and communication (e.g., Zoom and other video conferencing platforms) reduce significantly any burden on Defendants to litigate in the State of Florida; and (iii) The State of Florida has a strong interest in seeing this matter resolved in Florida, as the dispute involves contracts benefitting a Florida company.

5. Any conditions precedent to bringing this action have been performed, have occurred, have been waived, or have otherwise been excused by Defendants' course of conduct.

## PARTIES

6. Plaintiff, BlackSix, is a single member Florida limited liability company with a principal address of 1000 Brickell Plaza, Suite 3601, Miami, FL 33131. Plaintiff's sole member is Oliver Parsons, a Florida resident. Plaintiff is a citizen of the State of Florida.

7. Defendant, AAR, is a Louisiana corporation involved in oil and refined products distribution and logistics with its principal place of business in Hattiesburg, Mississippi. AAR is a citizen of the State of Mississippi.

8. Defendant, AAR, hold US Federal Government Unique Entity ID (UEI): E7R9RL388YD7 and Commercial and Government Entity (CAGE) code: 83FT4. Defendant AAR lists as officers Retired Colonel Richard Cantwell as CEO ("Cantwell"), Jeff DeRosia from Grand Isle Shipyard, Susan Sjo and Eric Malmstrom as Vice President of Government Contracts and Trading, and Pya Cope as CFO, and also Major Leif Rivera as COO as of December 2023, as shown AAR's corporate profile attached hereto as **Exhibit 1**.

9. Defendant, PROPANE MAN, is a Hawaii corporation with principal places of business being 94-171 Leonui St, Waipahu, Hawaii and 401 Broadway Drive Hattiesburg, MS 39401. PROPANE MAN's officers are Ms. Kelly M. Matson, President, Jesse Grantham, CEO, and Alvin Paguio, Director. On or about September 7, 2023, Grantham registered PROPANE MAN to do business in the state of Florida, as a foreign corporation, with an address at 495 Grand Blvd #200 Miramar Beach, FL 32550, at which Grantham also purported to be able to accept mail. PROPANE MAN is a citizen of the State of Hawaii.

10. Defendant, Grantham, founded AAR in 2017 and currently serves as its President and upon information and belief is a resides in Hattiesburg, Mississippi with a place of business at 401 Broadway Drive Hattiesburg, MS 39401. Grantham is a citizen of the State of Mississippi.

11. Defendants conduct business throughout the United States and within the State of Florida, including in this District.

**GENERAL ALLEGATIONS**

12. BlackSix was founded in 2021 to source and fund projects focused on global commodity, venture and special situation opportunities.

13. Oliver Parsons is the founder of BlackSix and has twenty years of experience in international trade and finance, particularly commodities and alternative investments. Mr. Parsons

3

has become a leading consultant in assessing global energy developments that impact energy prices and related investments, and is sought after by oil companies, investors, governmental organizations and other industry participants.

14. BlackSix has invested in multiple companies including a ship building company based out of Dubai ("Dubai Investment").

15. AAR is an oil and refined products distribution and logistics company that is affirmed by the US Government as a Service-Disabled Veteran Owned Small Business ("SDVOSB"), due to both Grantham and Cantwell's status.

16. Over the past six years, AAR has been awarded numerous US Federal Government contracts entirely due to AAR's SDVOSB minority status.

17. Today, AAR holds multiple US Federal contracts to supply diesel fuel, gasoline, ethanol, and propane, which have been singularly awarded to AAR because of its SDVOSB status.

18. Some of AAR's US Federal buyers include the US Navy and Veterans Affairs via the Defense Logistics Agency and DLA Energy as shown on the attached **Exhibit 2** with Issuers and Contracting Officers listed who include Frederick Bagley, Eric Smith, Hannah R Savine, Orlando Merritt, Sabrina Holland, James Clough, Matthew Womer, Sterling Matthews, Juebiline Mbandi, Lawrence Watson.

19. Grantham is a decorated army veteran who has since monetized his relationships with numerous government agencies to drive growth in AAR and other businesses including Bullock Investigations Security, which he also founded.

20. In or about early-2023, Grantham was introduced to Mr. Parsons where Grantham made claims that he has access to considerable ongoing volumes of fuel, including gasoline, diesel

4

and propane from over 40 of the most reputable domestic and international refineries such as Shell, BP, Total and Exxon.

21. In or about early-2023, Grantham suggested to Parsons that he, BlackSix and his substantial commodity network should invest and/or partner in a number of lucrative energy projects that Grantham was spearheading.

22. Grantham offered to become a strategic partner with Parsons and BlackSix and would share in the profits of these lucrative projects on the condition that substantial investment capital was provided with a value that mostly ranged from $10 million to $2 billion.

23. In order to gain trust and favor with Parsons, Grantham promoted his vast network of trusted relationships, which included being business partners with:

i) his uncle Robert Grantham CBE, a British investor and co-founder and chief investment strategist of GMO, LLC, a Boston based management firm with more than $100 billion in assets under management;

ii) his Godfather who is a retired 4-Star US Navy Admiral;

iii) Retired Colonel Robert Cantwell who attended West Point and had a 20-year career with the US Army Corps of Engineers;

iv) Jeff DeRosia who has over 30 years oilfield construction experience and is Operations Manager for Grand Isle Shipyard;

v) Major General Jill K. Faris, current Director of the Office of the Joint Surgeon General;

vi) Congressman Mike Ezell of Mississippi; and

vii)   the CEO of Shell USA, who Grantham credited to his entrance into the fuel industry, who gave Grantham and AAR office space in Shell's Headquarters in New Orleans, LA and with whom Grantham hunted sport.

24.    In or around May 16, 2023, Parsons was persuaded by Grantham to meet him and his business partners in Honolulu, Hawaii for a three nights trip to review AAR and its purchase of PROPANE MAN, to meet with Ms. Kelly Matson, Founder and President of PROPANE MAN, to meet with Alvin Paguio, Director of PROPANE MAN, to meet at Pearl Harbor with the US Navy and DLA to discuss its purchase of fuel and propane from AAR and PROPANE MAN, and to meet with Mike Flynn, a retired US Army Lieutenant General. Parsons paid for all hotel rooms for himself, Grantham and his business partners, totaling $2,200 total, as shown on **Exhibit 3** attached hereto. Parsons was never reimbursed despite Grantham's promises to do so.

25.    In or about June 2023, Parsons was prevailed upon to introduce DS-Mineralöl GmbH, a German company with a distinguished 50-year legacy and 72 fuel stations, who wished to purchase diesel fuel. Grantham said he, Cantwell and AAR would easily be able to supply fuel due to AAR's SDVOSB minority status. However, Grantham stalled for months, shifted the blame for the delay to Shell and BP, among other excuses, and ultimately never provided a contract, causing Parsons and BlackSix significant financial and reputational damage.

26.    At around the same time, Grantham stated AAR was seeking $1.5 to $2 billion in investor capital to build a floating oil refinery that had been approved by the US Navy. Due to the military network and SDVOSB minority status that he and Cantwell brought to AAR, the Navy had awarded AAR a decommissioned aircraft carrier for a $1 purchase price upon which the refinery would be built. Grantham stated this project would be in partnership with Grand Isle

6

Shipyard, specifically Jeff DeRosia who would lead the building of the refinery and its ongoing operation at sea, as shown on the attached **Exhibit 4**.

27. Grantham asked Parsons and BlackSix to bring investors to this lucrative project in exchange for equity ownership, which BlackSix did, including one of Parsons' most critical relationships from Saudi ARAMCO, but again Grantham stalled over the next months, provided ongoing excuses for delay, and never consummated the deal, thereby causing Parsons and BlackSix significant financial and reputational damage.

28. At around the same time, Grantham stated that AAR was seeking a $10 million investment for the acquisition of Stockstill Trucking Company, which would expand AAR's fuel shipping and logistics network in the US, would provide a very profitable return to investors. The expansion plan is attached hereto as **Exhibit 5**. Grantham suggested that Parsons and BlackSix should bring a potential investor, which BlackSix did, but AAR again never made any progress with the deal, thereby causing Parsons and BlackSix significant financial and reputational damage.

29. On or around July 2023, Grantham stated that AAR was seeking an investment of $100 million to $400 million to purchase an oil refinery near Dubai, UAE, which Grantham said was offered to AAR due to his and Cantwell's military experience and AAR's SDVOSB minority status. Grantham asked Parsons and BlackSix for assistance in bringing a suitable investor, so BlackSix again involved one of Parsons' most critical relationships from Saudi ARAMCO, but Grantham delayed with the deal, thereby causing Parsons and BlackSix significant financial and reputational damage, once again.

30. In or about July 2023, Grantham proposed a propane deal whereby BlackSix would provide funding to Grantham of Six Hundred Thousand Dollars ($600,000), which would be specifically used for the purchase and sale of propane by PROPANE MAN and would give

BlackSix 10% equity ownership in PROPANE MAN. Upon sale of the propane BlackSix was to earn a return of one dollar ($1) per gallon sold, and the core $600,000 would be continually revolved to purchase more propane on a weekly basis, and so on. The plan was pitched in the form of a Fuel Terminal Buy Sell deck, showing projected profits attached hereto as **Exhibit 6.** The deal was memorialized in a signed writing attached hereto as **Exhibit 7** ("Propane Agreement")**.**

31. The Propane Agreement is drafted as being between "BlackSix LLC and Jesse Grantham."

32. Upon information and belief, this representation is identical to that which he made to a third-party company, RMG Financial Management LLC which is suing Grantham, AAR and PROPANE MAN before the Western District of New York (Case No. 1:24-cv-01180-JLS) for fraud, fraudulent inducement, conversion and breach of contract.

33. Grantham had specifically represented in June and July that he and PROPANE MAN had the capability and capacity to purchase and sell $600,000 worth of propane on a weekly basis, as furtherance to Parsons' trip to Honolulu in May 2023.

34. Grantham had told Parsons on multiple occasions that AAR and PROPANE MAN were purchasing propane from The Gas Company, LLC dba Hawai'i Gas for $3.12 per gallon, and therefore $600,000 would have purchased 192,308 gallons per week, yielding a profit to BlackSix of $192,307.69 per week. Grantham told Parsons that his purchase price of propane would drop significantly from $3.12 to $2.00 per gallon starting on January 1, 2024, due to AAR's SDVOSB minority status attributed to Grantham and Cantwell, and therefore $600,000 would have purchased 300,000 gallons per week, thereby yielding a profit to Black Six of $300,000 per week.

35. From August 4, 2023, to April 2, 2024, the weekly sales of propane using the $600,000 would have yielded $8,130,769.23 in profit. Projected profit calculation is attached hereto as **Exhibit 8.**

36. As an example of similar profits generated from AAR's businesses deals, Grantham highlighted AAR's purchase and sale of fuel to the DLA and Veterans Affairs, which Grantham assured Parsons was a unique but realistic profit margin due to AAR's SDVOSB minority status. A purchase example is attached hereto as **Exhibit 9**.

37. On August 1, 2023, BlackSix wired $600,000 to the requested Island Gas Service account held at the Navy Federal Credit Union.

38. Upon information and belief, Grantham and PROPANE MAN purchased and sold propane on a weekly basis and have generated the anticipated profits, however, have never remitted the profits to BlackSix and have declined to account to BlackSix or even provide confirmations of purchases or sales despite numerous requests.

39. In attempt to add further legitimacy to his business dealings, Grantham requested that Parsons meet him in Miramar Beach, FL on August 8, 2023, to discuss trading Propane and have lunch with James, a recent AAR and PROPANE MAN hire from AmeriGas who Grantham asserted was AmeriGas's top performing propane salesperson for Hawaii and USA West Coast regions, which Parsons duly did, and paid for his own travel expenses.

40. At or about the same time, Grantham had heard about BlackSix's key investment in the Dubai Company and requested to be allowed to invest alongside BlackSix, as the Company was in a "friends and family" round at that time, and open to a very limited amount of people. Parsons vouched for Grantham and as a result legal documents were prepared as Grantham had indicated that he wished to invest Two Million Dollars ($2,000,000) into the Dubai Company.

41.     On or about September 8, 2023, Grantham met the principals of the Dubai Company, in-person, in Dubai, and executed the documents subscribing to shares in exchange for $2,000,000, to be transmitted over the course of the following four (4) months.

42.     Grantham never transmitted the funds, despite being contacted by counsel for the Dubai Company on numerous occasions.

43.     At or around the same time, in what can only be described as a bizarre and misguided attempt to garner camaraderie regarding his Dubai Company investment, Grantham sent a self-recorded video of him engaging in sexual intercourse with an escort, which included his incredibly lewd language, to those engaged in the Dubai Company.

44.     Grantham's later failure to transmit the agreed-to $2,000,0000 caused financial and reputational damage to Parsons and BlackSix, and significant harm to the Dubai Company, including the loss of the company's largest client, who has threatened lawsuit, and unpaid vendor bills and rent to their shipyard owner, also all of whom have also threatened lawsuit, and a earned the Dubai Company a poor reputation in a small, tightly connected industry. Moreover, Grantham's sharing of his explicit sexual exploits caused significant reputational damage to Parsons and BlackSix, as they introduced Grantham.

45.     In order to keep the Dubai Company solvent and in-business, Parsons and BlackSix have had to cover Grantham's significant monetary shortfall.

46.     Grantham again requested that Parsons meet him for lunch in Pensacola on September 15, 2023, to discuss acquiring AmeriGas (a $4 billion company), who Grantham said had approached him and AAR due to his and Cantwell's SDVOSB status, and asked if Parsons would be part of the Board of Directors and to serve as the public "face" of AmeriGas, to which he agreed.

47. On or about October 2023, Parsons was prevailed upon to introduce a large fuel station chain, Orion Oil, to AAR and Grantham in order to supply their over 150 locations. Grantham undertook that a contract to supply gasoline and diesel would be issued in November 2023 for 1,000,000 gallons per month and insisted on being able to do so during multiple calls with the CEO of Orion Oil. Confirmation of willingness to contract is attached hereto as **Exhibit 10**. Grantham never provided the agreed upon contract, and furnished multiple excuses for the delay, thereby causing Parsons and BlackSix significant financial and reputation damage.

48. In or about November 2023, Grantham asked Parsons and BlackSix to review a deal where, due to Grantham and Cantwell's SDVOSB status, AAR was going to buy medical gloves and resell to the US government via Jill Faris, Director of the Office of the Joint Surgeon General. Parsons immediately alerted Grantham that his supplier was not properly credentialed and very likely fake, and therefore Grantham asked Parsons for a legitimate glove supplier, which Grantham said he would immediately use as a substitute supplier. Parsons and BlackSix provided Grantham and AAR with a legitimate supplier, who held the gloves in warehouse for Grantham as he represented that a purchase order would be issued in November 2023, but nothing was heard of since that date, thereby causing Parsons and BlackSix significant reputational damage.

49. On 28 December 2023, Parsons asked for return of his $600,000, to which Grantham stated he could not do so at that time. Therefore, Parsons asked for a minimum $200,000 of the funds since that amount was needed for immediate year-end payroll and taxes. Grantham again refused but promised that BlackSix would receive a "large profit" by January 11, 2024.

50. On January 11, 2024, Grantham texted Parsons as shown on **Exhibit 11** attached: "We finished up the numbers for Florida it's a strong profit for us."

51. Nothing was remitted on January 11, 2024, or at any time thereafter.

52. For the following three (3) weeks, Grantham was almost entirely unavailable by phone, text message and WhatsApp message, clearly ignoring Parsons.

53. On February 2, 2024, concerned about AAR and Grantham's silence, Parsons called Eric Malmstrom, a Vice President of Government Contracts and trader in hydrocarbon products at AAR ("Malmstrom"). He stated that had never heard of Parsons nor BlackSix, nor did he know anything about the $600,000 committed to trading propane. Further Malmstrom said he was not aware of the contracts that Grantham specifically stated Malmstrom was working on in furtherance of BlackSix's and PROPANE MAN's propane deal, nor the other gasoline and diesel deals BlackSix had brought to Grantham, including the 1,000,000 gallons per month fuel supply that Grantham had said Malmstrom was arranging for Orion Oil by November 2023. Parsons asked Malmstrom to let Grantham know about their conversation and Parsons' inability to reach Grantham, to which Malmstrom agreed.

54. Grantham's ongoing silence persisted so on February 14, 2024, Parsons spoke to Retired Major Leif Rivera, who Grantham has said numerous times was Chief Operating Officer of PROPANE MAN and AAR ("Rivera"). Parsons informed Rivera that Grantham had taken $600,000 from Parsons over six months earlier, and Grantham had not provided any assurance of the profit or whereabouts of the funds, and had been ignoring Oliver for too long. Parsons was told by Rivera that he had no idea about the $600,000 and did not even know Parsons had committed those funds, which greatly alarmed Parsons since Rivera was the COO supposedly overseeing all business operations. The following day Grantham contacted Parsons by WhatsApp, and Parsons was also contact by Rivera stating that he could not facilitate communications any further.

55. Due to Grantham's continued silence and lack of assurance of the whereabouts of the $600,000 and profits due, counsel for BlackSix sent an email to Grantham on March 2, 2024,

copying in Malmstrom, Rivera and Cantwell, requesting provision of all documentation regarding the purchase and sale of propane pursuant to the agreement or confirmation as to the status of the monies being held.

56. Grantham responded on March 4, 2024, stating variously:

i) That he had been in communication with Parsons every week and sometimes multiple times in the day.

ii) The reason Parsons asked counsel to contact him was due to bad information from brokers, who have "cost themselves future commissions."

57. BlackSix counsel responded that day, copying in Malmstrom, Rivera and Cantwell, informing Grantham that his email was non-responsive and reiterated the specific set of demands for documentation or explanation why they are not readily available and kept in the ordinary course of business.

58. Grantham failed to respond, and nobody responded on behalf of AAR or PROPANE MAN.

59. On March 8, 2024, since Grantham had still not responded, counsel for BlackSix emailed Grantham again, providing a response deadline on behalf of AAR and PROPANE MAN, which Grantham also ignored.

60. As a result of Defendants' actions, Parsons and BlackSix have been harmed.

## COUNT I
## FRAUD (As against all Defendants)

61. BlackSix realleges and incorporates the allegations above in Paragraphs 1 through 60 as though fully set forth herein.

62. Each of the Defendants made several material misrepresentations to Plaintiff.

63. Grantham asked BlackSix to fund rolling purchases of propane.

64. Grantham represented to Plaintiff that he would return the principal and profits of $1 for each gallon of propane sold.

65. In reliance on the statements of Grantham, on August 1, 2023, BlackSix provided $600,000.00 to facilitate the first of the rolling propane purchases.

66. Grantham, AAR, and PROPANE MAN took the $600,000.00 and failed to return the principal amount or to provide the promised profits.

67. In fact, after six months Grantham, AAR and PROPANE MAN failed to provide the return of any of the principal or promised profits.

68. Grantham, AAR and PROPANE MAN failed to account for the monies or provide any visibility into the purchase of propane.

69. As represented by Grantham, Grantham, AAR and PROPANE MAN purchased the propane as represented on January 11, 2024.

70. As represented by Grantham, Grantham, AAR and PROPANE MAN obtained, at least, the projected profits, as represented on January 11, 2024.

71. On account of the foregoing, BlackSix has suffered primary damages in the amount of $600,000.

72. Grantham, AAR and PROPANE MAN failed to pay the promised profits to BlackSix.

73. On account of the foregoing, BlackSix has been damaged in the amount of at least $8,130,769.23.

**WHEREFORE,** BlackSix is entitled to judgment in its favor and against Defendants Grantham, AAR and PROPANE MAN in the amount of at least $8,130,769.23 along with punitive

damages, costs, and statutory interest, together with such further and equitable relief the Court deems just and proper.

## COUNT II
## FRAUDULENT INDUCEMENT (As Against all Defendants)

74. Plaintiff repeats and realleges with the same force and effect as if fully set forth herein the allegations contained in paragraphs 1 through 73.

75. Each of the Defendants made several material misrepresentations to Plaintiff.

76. Grantham asked BlackSix to fund rolling purchases of propane.

77. Grantham stated that he would return the principal and profits of $1 for each gallon of propane sold.

78. In reliance on the statements of Grantham, on August 1, 2023, BlackSix provided $600,000.00 to facilitate the first of the rolling propane purchases

79. Grantham, AAR, and PROPANE MAN took the $600,000.00 and failed to return the principal amount or to provide the promised profits.

80. In fact, after six months Grantham, AAR and PROPANE MAN failed to provide the return of any of the principal or promised profits.

81. Grantham, AAR and PROPANE MAN failed to account for the monies or provide any visibility into the purchase of propane.

82. As represented by Grantham, Grantham, AAR and PROPANE MAN purchased the propane as represented on January 11, 2024.

83. As represented by Grantham, Grantham, AAR and PROPANE MAN obtained, at least, the projected profits, as represented on January 11, 2024.

84. On account of the foregoing, BlackSix has suffered primary damages in the amount of $600,000.

85. Grantham, AAR and PROPANE MAN failed to pay the promised profits to BlackSix.

86. Grantham made numerous false, fraudulent statements to Parsons to induce them to provide him, AAR and PROPANE MAN with money with no intent to repay those funds or to account for them.

87. On account of the foregoing, BlackSix has been damaged in the amount of at least $8,130,769.23.

**WHEREFORE,** BlackSix is entitled to judgment in its favor and against Defendants Grantham, AAR and PROPANE MAN in the amount of at least $8,130,769.23 along with punitive damages, costs, and statutory interest, together with such further and equitable relief the Court deems just and proper.

## COUNT III
## CONVERSION (As Against all Defendants)

88. Plaintiff repeats and realleges with the same force and effect as if fully set forth herein the allegations contained in paragraphs 1 through 87.

89. Grantham asked BlackSix to fund rolling purchases of propane.

90. Grantham stated that he would return the principal and profits of $1 for each gallon of propane sold.

91. In reliance on the statements of Grantham, on August 1, 2023, BlackSix provided $600,000.00 to facilitate the first of the rolling propane purchases

92. Grantham, AAR, and PROPANE MAN took the $600,000.00 and failed to return the principal amount or to provide the promised profits.

93. In fact, after six months Grantham, AAR and PROPANE MAN failed to provide the return of any of the principal or promised profits.

94. Grantham, AAR and PROPANE MAN failed to account for the monies or provide any visibility into the purchase of propane.

95. As represented by Grantham, Grantham, AAR and PROPANE MAN purchased the propane as represented on January 11, 2024.

96. As represented by Grantham, Grantham, AAR and PROPANE MAN obtained, at least, the projected profits, as represented on January 11, 2024.

97. Grantham, AAR and PROPANE MAN took wrongfully asserted actions of dominion over property belonging to BlackSix, inconsistent with its ownership rights.

98. On account of the foregoing, BlackSix has suffered primary damages in the amount of at least $600,000 plus interest.

**WHEREFORE,** BlackSix is entitled to judgment in its favor and against Defendants Grantham, AAR and PROPANE MAN in the amount of $600,000.00. along with costs, and statutory interest, together with such further and equitable relief the Court deems just and proper.

## COUNT IV
### BREACH OF CONTRACT (As Against all Defendants)

99. Plaintiff repeats and realleges with the same force and effect as if fully set forth herein the allegations contained in paragraphs 1 through 98.

100. BlackSix, Grantham and PROPANE MAN entered into an contract for the purchase and sale of propane.

101. BlackSix paid the $600,000 pursuant to the Propane Agreement.

102. Upon information and belief, Grantham, through PROPANE MAN and AAR, purchased propane using the $600,000 committed by BlackSix.

103. However, the Defendants have not only kept all of the profits but also the principal.

104. The Defendants breached the terms of the Propane Agreement.

105. As a direct and proximate result of the breaches of the Defendants, BlackSix has suffered damages in an amount according to proof at trial but upon information and belief to be in excess of $8,130,769.23.

**WHEREFORE,** BlackSix is entitled to judgment in its favor and against Defendants Grantham, AAR and PROPANE MAN in the amount of at least $8,130,769.23 along with costs, and statutory interest, together with such further and equitable relief the Court deems just and proper.

## COUNT V
## IMPOSITION OF CONSTRUCTIVE TRUST (AGAINST ALL DEFENDANTS)

106. BlackSix realleges and incorporates the allegations above in Paragraphs 1 through 105 as though fully set forth herein.

107. Grantham, AAR and PROPANE MAN made an express promise that BlackSix monies would be used for the purchase and sale of propane, which would yield a profit for BlackSix.

108. BlackSix transferred $600,000 in reliance thereon.

109. A confidential relationship existed as between BlackSix and the Defendants.

110. BlackSix trusted and depended upon the Defendants to buy and sell propane, and remit certain profits to BlackSix;

111. By virtue of failing to repay the amount invested and / or the profits, the Defendants have been unjustly enriched.

112. Whereby a constructive trust should be imposed, and all monies turned over to BlackSix.

WHEREFORE, Plaintiff, BlackSix, demands judgment this Complaint and an award of equitable relief and monetary relief against the Defendants as follows:

i) A pre-judgment freezing order;

ii) Imposition of a constructive trust;

iii) Entry of judgment for damages for Defendants' breach of contract;

iv) Entry of an award of costs and attorney's fees, if applicable, incurred in this action;

v) Entry of an order for any such other and further relief that this Court deems just and proper.

Dated: January 17, 2025

**GS2 LAW, PLLC**

By: /s/ Robert Garson
Robert Garson, Esq.
FL Bar No. 1034548
rg@gs2law.com
20803 Biscayne Blvd., #405
Aventura, Florida 33180
(305) 780-5212
*Attorneys for Plaintiff*